UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD GORNY, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**WAYFAIR INC. and WAYFAIR LLC**<br><br>Defendants | Case No. **1:18-cv-08259-MFK**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

This putative class action arises from Wayfair's sale to consumers of products infested with *Cimex Lectularius, i.e., bed bugs*, which are insects that feed exclusively on human and animal blood, in total disregard of the health and safety of Plaintiff and putative class members. Contrary to Wayfair's misleading presentation, the bed bug problem has been ongoing for at least two years. Scores of consumers have complained[1] to Wayfair, yet Wayfair continues to sell these products to this day.

To avoid liability altogether Defendants Wayfair Inc. and Wayfair LLC (collectively, "Wayfair") assert that this case belongs in arbitration because of certain language in the "Terms of Use" of Wayfair's website, notwithstanding Plaintiff's allegation that he "is not relying in any way of the Terms of Use" on Wayfair.com in bringing this lawsuit." Compl. ¶ 20. The fact that the terms themselves are called "Terms of **Use**" shows that the terms govern the *use* of the website and not every single claim arising from Wayfair's defective products. If Wayfair intended that the

---

[1] *E.g.,* "Went to urgent care on July 4th (yesterday) and they verified it was bedbugs - so my wife and I spent all of July 4th ripping the mattresses off, spending about $200 on insecticides, mattress covers, etc., spraying poison through out our bedroom, and washing everything in hot water, drying on extra high heat. Wasted holiday. I called Wayfair this morning and complained, they instantly said no problem, they'll refund my money. I think Wayfair knows of this problem, as they didn't seem surprised." Complaint, ECF Doc. 1 ("Compl.") ¶ 16.

1

778782.1

Terms cover all claims arising from the sale of its products, it should and could have drafted "Terms of **Sale**" instead.

In any event, Wayfair's Terms of Use provide only for the arbitration of disputes "arising from or relating to these Terms of Use and their interpretation," which this product liability case does not. That fact is plainly evident from the Terms of Use themselves. Those terms discuss issues related to Wayfair's privacy policy, intellectual property rights, rules governing user-generated content, social media usage, and the Wayfair Rewards program. *See* Wayfair Terms of Use, last updated May 17, 2018, Exhibit A to the Klein Declaration (hereinafter "Ex. A"). The terms do not at all reference claims relating to defective products or a consumer's rights to pursue Wayfair for fraud. Mr. Gorny's claims fall outside of the scope of Wayfair's arbitration provision and he should not be compelled to arbitrate this matter, as "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted).

Even if his claims were remotely related to Wayfair's website Terms of Use, Wayfair has not met its burden to prove that Mr. Gorny ever even saw or agreed to the Terms of Use, or the arbitration provision therein, at any point, let alone before using the website or purchasing a bedbug infested headboard from Wayfair. Nor did Plaintiff sign the arbitration agreement. To the extent Wayfair claims that Mr. Gorny's use of the website- in and of itself- manifested his asset, that position is unconscionable: one must access and use the website, specifically the Terms of Use page, in order to be able to read the arbitration provision. Said differently, Mr. Gorny would have already been bound by the arbitration agreement by having accessed the Terms of Use containing the arbitration clause because the arbitration provision is located on Wayfair's website. Furthermore, Defendant does not provide a mechanism to opt-out of the arbitration provision so,

778782.1

once the Terms of Use are accessed, Plaintiff is bound by Defendant's definition.

Finally, Defendant Wayfair, Inc. is not party to the Terms of Use. Nor is Wayfair Inc. an intended third-party beneficiary. Wayfair, Inc. cannot compel Plaintiff to arbitration for these additional reasons as well.

Accordingly, and for the reasons stated more fully herein, Defendants' Motion to Compel Arbitration should be denied.

I.  **Factual Background**

Plaintiff and the Class members purchased products from Wayfair infested with bedbugs. Compl. ¶ 1. Wayfair failed to eradicate the bedbug problem when it first became aware of that problem, continuing to sell the infested products for at least two (2) years after it became aware of the bedbug problem and, upon information and belief, to this day. Compl. ¶ 2.

On July 4, 2018, Plaintiff purchased a headboard from Wayfair. Compl. ¶ 19. Wayfair.com is registered by Wayfair, LLC, which is wholly owned by SK Retail, Inc., itself wholly owned by Wayfair Inc. *See* http://whois.domaintools.com/wayfair.com; Corporate Disclosure Statement, ECF Doc. 10. Wayfair, LLC, not Wayfair Inc. – the latter being the entity responsible for the manufacture, sale, and delivery of the headboard – is the registered owner of Wayfair.com. http://whois.domaintools.com/wayfair.com.

On or about July 7, 2018, Plaintiff received the Wayfair headboard that, unbeknownst to Plaintiff, was infested with bedbugs and stored in a facility infested with bedbugs. Compl. ¶¶ 29-30. Unaware of the infestation of bed bugs, Plaintiff brought the headboard into his home and installed the headboard in his bedroom. *Id*. ¶ 31. Plaintiff then observed numerous small insects, later identified as bed bugs, scurrying about his headboard and property around it, some of them blood engorged. *Id*. ¶¶ 32-33.

Mr. Gorny's experience is remarkably similar to dozens of other consumers who have publicly complained about the same thing happening to them. *Id.* ¶16. Indeed, another consumer has already filed a lawsuit against Wayfair after also receiving a bedbug-infested headboard. *Nicholas v. Wayfair Inc. et al.,* 1:19-cv-01974 (EDNY 2019). That consumer alleges that she informed Wayfair, *including its CEO*, of the bedbug problem in *September 2016*. *Id.*, ECF Doc. 1 (Complaint), ¶ 18 and Exhibit A thereto.

The Terms of Use do not encompass the statutory and tort claims these consumers, including Plaintiff, have against Wayfair based of its delivery of insect-ridden products. Wayfair, LLC's website provides:

> "Welcome to Wayfair!
> Wayfair LLC and its affiliated brands, including Wayfair.com, Joss & Main, AllModern, Birch Lane and Perigold ( "Wayfair", "we" or "us") provides this and other websites (including applications and other online services that are accessible through various desktop, tablet and mobile web browsers from time to time) (collectively, "Sites") subject to your compliance with these Terms of Use.
>
> PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE USING THE SITES. These Terms of Use constitute an agreement between Wayfair and you. We recommend that you print out a copy of these Terms of Use for your records. **By using the Sites, you affirm that you are able and legally competent to agree to and comply with these Terms of Use**. If you do not agree to these Terms of Use or if you are not legally competent to agree to them, then you may not use the Sites."

Ex. A (emphasis added).

Wayfair confirms that the Terms of Use concern "use of the Sites" in the General Information section, which provides:

> "These Terms of Use set forth the entire Agreement between you and Wayfair **with respect to use of the Sites** and supersede any prior agreements between you and Wayfair relating to such subject matter."

*Id.* The agreement is limited to Covered Disputes:

> Any dispute between you and Wayfair, its agents, employees, officers, directors,

4

778782.1

principals, successors, assigns, subsidiaries or affiliates (collectively for purposes of this section, '**Wayfair**') **arising from or relating to these Terms of Use** and their interpretation or the breach, termination or validity thereof, the relationships which result from these Terms of Use, including disputes about the validity, scope or enforceability of this arbitration provision (collectively, "**Covered Disputes**") will be settled by binding arbitration.

*Id*.

Moreover, the Terms of Use define Wayfair as "Wayfair LLC and its affiliated brands, including Wayfair.com, Joss & Main, AllModern, Birch Lane and Perigold ( "Wayfair", "we" or "us")". Later, in the Legal Dispute section, the term Wayfair is used as a collective term to refer to "Wayfair, its agents, employees, officers, directors, principals, successors, assigns, subsidiaries or affiliates". Wayfair, Inc. is not listed. Had Wayfair LLC wanted its parent company's parent to be covered by the arbitration provision, it would have at least listed "Parent" as it did in another section regarding its limitation of liability for sweepstakes?.[2]

Finally, the Order Acceptance Section in the Terms of Use provides:

The receipt of an order number or an email order confirmation **does not constitute the acceptance of an order or a confirmation of an offer to sell**. Wayfair reserves the right, without prior notification, to limit the order quantity on any item and/or to refuse service to any customer. Verification of information may be required prior to the acceptance of an order. Prices and availability of products on the Sites are subject to change without notice. Errors will be corrected when discovered and Wayfair reserves the right to revoke any stated offer and to correct any error, inaccuracy, or omission (including after an order has been submitted). Certain orders constitute improper use of the Sites and the Wayfair Rewards Program described below. Wayfair reserves the right, at its sole discretion, to refuse or cancel any order for any reason. Your account may also be restricted or terminated for any reason, at Wayfair's sole discretion. Items purchased pursuant to a quantity

---

[2] The terms of use provide:

"BY ENTERING THE PROMOTION, ALL ENTRANTS AGREE TO RELEASE, INDEMNIFY AND HOLD HARMLESS THE PROMOTION PARTIES AND EACH OF THEIR RESPECTIVE PARENT, SUBSIDIARY AND AFFILIATED ENTITIES AS WELL AS THE SUCCESSORS, ASSIGNS, AND LICENSEES OF EACH AND THE RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, SHAREHOLDERS, CONTRACTORS AND REPRESENTATIVE OF EACH, FROM ANY AND ALL CLAIMS [...]." Ex. A.

discount may be re-priced upon cancellation.

*Id.* (emphasis added).

## II. Argument

### A. Applicable Law and Standard of Review

As an initial matter, arbitrability "is undeniably an issue for judicial determination," and should only be settled by an arbitrator if the parties agreed to allow the arbitrator to decide that question. *AT&T Tech.*, 475 U.S. at 649. As the Seventh Circuit recently reaffirmed, "[c]ourts, not arbitrators, are charged with deciding 'gateway matters, such as whether the parties have a valid arbitration agreement at all, or whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Huron Consulting Grp. Inc. v. Gruner*, No. 17 C 6042, 2018 WL 572709, at *4 (N.D. Ill. Jan. 24, 2018) (citing *Wisconsin Local Gov't Property Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414-15 (7th Cir. 2016) (quoting *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453 (2003)). Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear[] and unmistakabl[e]" evidence that they did so. *See AT&T Tech.*, 475 U.S. at 649.

There is no clear and unmistakable evidence here that the parties intended to delegate the issue of arbitrability to an arbitrator. Because the purported arbitration provision identified by Wayfair does not apply to Plaintiff's claims, as it is limited to the Terms of Use of a website and/or Defendant has not provided any evidence that Plaintiff saw or otherwise viewed the agreement containing the purported arbitration provision, and because Wayfair Inc. is not a signatory to the agreement or otherwise a beneficiary of it, this Court, and not the arbitrator, should decide whether Plaintiff's claims are arbitrable.

Turning to the merits, "parties are bound to submit to arbitration only those issues that they

6

778782.1

have agreed clearly to resolve through the arbitration mechanism, and a court should not extend an agreement by construction or implication." *Travis v. Am. Mfrs. Mut. Ins. Co.*, 335 Ill. App. 3d 1171, 1176 (Ill. App. Ct. 5th Dist. 2002).[3] Second, the scope of an arbitration clause depends on the parties' intent. "[T]he parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Salsitz v. Kreiss*, 198 Ill.2d 1, 13 (Ill. 2001).

"[A]rbitration is a matter of contract." *Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1031 (7th Cir. 2012) (quoting *Concepcion*, 131 S. Ct. at 1745 (citation omitted)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted). In fact, an arbitration agreement "must [be] place[d] . . . on an equal footing with other contracts, and enforce[d] . . . according to [its] terms." *Gore*, 666 F.3d at 1031.

While the FAA does not expressly identify the evidentiary standard a non-movant must meet to show there was no agreement to arbitrate, most courts apply a standard similar to "that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). Accordingly, "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Id*. Just as with motions for summary judgment, in deciding whether there is a genuine issue of material fact, the evidence of

---

[3] Wayfair asserts that the Federal Arbitration Act (the "FAA") applies to its Motion. Nevertheless, under the FAA, certain issues are governed by state law, including the formation and scope of any arbitration agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Defendant contends that "Illinois and Massachusetts law are substantively the same as to the issues raised in this motion. This Court therefore need not engage in a choice-of-law analysis for purposes of resolving Wayfair's motion to compel arbitration." (Defendant's Memo at 7 n.1). Accordingly, Plaintiff cites to Illinois law.

the party opposing compelled arbitration "is to be believed and all justifiable inferences are to be drawn in his favor." *Id*.

Furthermore, an arbitration clause is unenforceable if it is unconscionable. *Jackson v. Payday Financial, LLC* 764 F.3d 765, 779 (7th Cir. 2014) (Illinois law).

### B. Wayfair LLC's arbitration provision in the Terms of Use is outside the scope of Plaintiff's claims.

#### 1. Defendant has not provided evidence that Plaintiff's claim is governed by the Terms of Use or is a Covered Dispute.

Simply put, the plain language of Wayfair, LLC's arbitration provision is limited to claims "**arising from or relating to these Terms of Use and their interpretation or the breach, termination or validity thereof, the relationships which result from these Terms of Use**." Plaintiff has not alleged a violation of the Terms of Use of the website, nor based any of his claims on a violation of the Terms of Use of the website. Compl. ¶ 20. Accordingly, Plaintiff's claims are outside the scope of the arbitration provision upon which the Wayfair Defendants attempt to rely. *See* Ex. A (covering website related things like privacy policy, intellectual property rights, rules governing user-generated content, social media usage, and the Wayfair Rewards program).

This result is in line with other courts that have addressed the issue. *See Nikolin v. Samsung Elecs. Am., Inc.*, No. CIV.A. 10-1456, 2010 WL 4116997, at *4 (D.N.J. Oct. 18, 2010) (plaintiff's claims under the New Jersey Fraud Act for alleged misrepresentations relating to LED televisions were outside the scope of the Samsung website "Terms of Use" because "Plaintiff has not alleged that either she or Samsung violated the terms of Samsung's website, and Plaintiff has not alleged that her claims arise under the website's terms"); *Ryanair DAC v. Expedia Inc.*, No. C17-1789RSL, 2018 U.S. Dist. LEXIS 131683, at *7-8 (W.D. Wash. Aug. 6, 2018) (choice-of-law clause in the terms of use on defendant's web site would apply only if plaintiff was suing for breach of those

8

778782.1

terms of use, which it was not).

Plaintiff's claims do not arise out of the Terms of Use of the Wayfair website but out of the sale and receipt of a headboard that was infested with bedbugs and the negligence and other wrongdoing of Wayfair, LLC and Wayfair, Inc., which have nothing to do with the website or its use. Compl. ¶¶ 1, 20, 26, 70.

### 2. Wayfair's own arguments are unavailing.

In arguing for arbitration, Wayfair advances two legal arguments. Neither withstands scrutiny.

First, Wayfair invokes what it refers to as a "presumption" and a "liberal policy of favoring" arbitration under the FAA. Def Mem. at 6. But as the Supreme Court has clarified, "this 'policy' is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010). The Court has "never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes … that the parties have agreed to submit.'" *Id*. Thus, despite the FAA's "pro-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002).

Such is the case here, and Wayfair cannot use the "strong presumption" to rewrite and improperly expand the scope of an arbitration provision that does not apply to Plaintiff's claims at all. Courts applying Illinois law have in fact consistently refused to expand narrow arbitration clauses the way Wayfair suggests. *See, e.g., Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 640 (7th Cir. 2002) (denying arbitration of certain claims and refusing to "do violence" to narrow

9

778782.1

arbitration clause by interpreting it to include tangentially related issues); *United Cable Television Corp. v. Northwest Ill. Cable Corp.*, 162 Ill. App. 3d 411, 413 (Ill. App. Ct. 3d Dist. 1987) (denying arbitration of claims that did not "affect the general policy of the Company," as specified by the arbitration agreement).

In *Sarantakis v. Gruttadauria*, Judge St. Eve compared two different arbitration clauses, one limited to disputes arising out of the brokerage agreement, and a second, "more expansive" clause relating to any controversy arising out of the customer's accounts. She pointed out that the draftsman made the decision to craft a more restrictive clause and would have to live with that restriction as to what must be arbitrated:

> The parties **did not agree to arbitrate all disputes** between the client and the broker. The parties easily could have drafted the arbitration clause to include any controversy related to the account itself if they wished it to have a more expansive grasp. **Because the agreement to arbitrate is limited to complaints that relate to the account agreement and because Plaintiffs' claims can be asserted without reference to the account agreement, the Court finds that they fall outside the scope of the arbitration clause**.

2003 WL 1338087, at *5, (N.D. Ill. March 17, 2003)(emphasis added).

The Seventh Circuit has treated similar contractual language as a significant limitation on the scope of an arbitration clause. In *Welborn*, for example, the parties had agreed to arbitrate "any" dispute "with respect to any invoice amount." *Id*. at 636. The plaintiff sued defendant, its medical transcription vendor, alleging that defendant had (1) defrauded plaintiff and breached the agreement by inflating the amount of work for which plaintiff would be billed; (2) committed constructive fraud and violated the Indiana Deceptive Consumer Sales Act by misrepresenting its counting and billing practices; and (3) breached the parties' agreement by failing to meet designated work deadlines. *Id*. at 636, 640. Defendant argued that the arbitration clause in the parties' agreement required the arbitration of all these claims, but the Seventh Circuit disagreed.

10

778782.1

"The arbitration clause here does not provide for the resolution of all controversies and claims relating to the contract," the court explained. *Id*. at 639. "[I]ndeed, it does not even provide for the resolution of all controversies and claims relating to or arising out of billing." *Id*. The only claims that were arbitrable under this clause were those alleging that defendant had improperly inflated its invoices. The district court had therefore erred, in the Seventh Circuit's view, by requiring arbitration of plaintiff's other claims, premised on defendant's statements about its billing practices (rather than the bills themselves), or on defendant's alleged failure to meet deadlines. *Id*. at 640-41.

Similarly, in *Bradford-Scott Data Corp. v. Physician Computer Network*, the parties entered into a Master License Agreement that authorized the plaintiff to redistribute the defendant's computer software and required arbitration of "any payment dispute concerning license or support fees." 136 F.3d 1156, 1157 (7th Cir. 1998). Plaintiff later alleged that the defendant breached the parties' agreement by increasing plaintiff's sales quota, by disclosing plaintiff's customer lists to unauthorized parties, by soliciting plaintiff's customers, and by "unreasonably withholding consent" to plaintiff's assignment of its rights under the agreement to a potential purchaser. *Id*. Affirming the district court, the Seventh Circuit concluded that none of these claims were arbitrable under the Master License Agreement because none were "payment dispute[s]." *Id*. at 1158. The same logic applies here.

**C.      Even if the scope of the arbitration provision did govern Plaintiff's dispute, Plaintiff did not agree to the arbitration clause.**

Assuming, *arguendo*, that the Terms of Use had been drafted so as to include Plaintiff's product liability and fraud claims within their scope, Plaintiff never assented to arbitrate his claims because the arbitration clause was contained within an invalid "browsewrap" agreement Plaintiff never even noticed. Customers do not have to view the Terms of Use containing the arbitration

11

778782.1

agreement that Defendant seeks to enforce before using the website or before submitting their order. Wayfair knows this, as it tracks precisely how many people have actually visited the Terms of Use on the website, including the date and time on which the Terms of Use were visited. *See* Declaration of Jonathan Klein, Dkt. 21-1, at 13 ("Wayfair […] maintains records on customer browsing activity on its sites in the ordinary course of business, which Wayfair tracks as part of its customary business practices").[4] Furthermore, a simple visit to the website indicates that website users are not required to open the Terms of Use before proceeding to use the website.

Wayfair's Terms of Use are located at the very bottom of the webpage in font that is significantly smaller than the font used to direct people's attention to the items under the "About Us" and "Customer Service" links, which appear in a section above the line and in larger font. *See* Screenshot located in Declaration of Jonathan Klein, Dkt. 21-1, at 10. Notably, the Terms of Use are not even listed in the Customer Service section. Curiously, a "Return Policy" *without* reference to an arbitration policy is. The Terms of Use are well below a line suggesting the end of the webpage, similar to how a footnote would appear. Also, this screen shot was not taken at the top of the webpage, but at the very bottom, which required significant scrolling down to get there: the Terms of Use hyperlink is 20 or more scrolls down from the top of the webpage. Compl. ¶ 22.

"No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract," and

---

[4] Defendant uses the Klein and Baugh Declarations to make a number of factual assertions on points that have no relation to the question of arbitrability and are outside of the four corners of Plaintiff's Complaint, for example that Plaintiff's experience was an isolated incident and not indicative of a more widespread issue. This assertion is not only demonstrably untrue, as the evidence will reveal, but it is an attempt to inject extraneous facts into this dispute at the pleadings stage, which is inappropriate in and of itself. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). The Declarations should accordingly be given little weight, or ignored altogether.

this Court should not be the first to do so. *Sgouros v. TransUnion Corp.*, No. 15-1371, 2016 WL 1169411, at *4 (7th Cir. Mar. 25, 2016); *see also Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1178-79 (9th Cir. 2014) ("[W]e therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) ("Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."); *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) ("[A party's] mere use of the website can only serve as a manifestation of assent where [the party] had, or should have had, reason to know that mere use would be so interpreted."). *Cf. Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379 (7th Cir. 2007) (finding terms and conditions binding on a plaintiff when undisputed evidence demonstrated that he had to affirmatively click agreement to the terms and conditions in order to ship a package using the website).

As such, Wayfair seeks to enforce a "browsewrap" agreement. The Terms of Use are only referenced **below** the conspicuous and large purple Place Your Order button, in a hyperlink in small font and text, as is typical of a browsewrap agreement. Wayfair does not require users to click "I Agree" before making a purchase, as a clickwrap agreement would require. *See, e.g., Day v. Microsoft Corporation*, No. C13-478-RSM, 2014 WL 243159, at *1-2 (W.D. Wash. Jan. 22, 2014) (Windows 8 Pro customer had to affirmatively check a box stating "I accept the license terms" as well as an "Accept" button before the software would begin installing); *Sherman v.*

13

778782.1

*AT&T Inc.,* No. 1:2011-CV-5857, 2012 WL 1021823, at *1 (N.D. Ill. Mar. 26, 2012) (unpublished) (to activate his Internet service, the plaintiff was "required to complete an online registration process, during which he was asked to check a box labeled 'I have read and agree to the AT&T Terms of Service,'" and was unable to access the Internet until he checked the box). *See also Sgouros*, 2016 WL 1169411, at *3 ("we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.")). Indeed, the Klein Declaration, which asserts that Plaintiff visited 13,166 distinct web pages on wayfair.com and its affiliated brands over 203 separate days, does not contend that Plaintiff ever visited the Terms of Use page, via the inconspicuous and non-mandatory hyperlink. *Id.* ¶ 13.

Because Plaintiff never manifested his assent to the Terms of Use, there was never any agreement to arbitrate in the first place (even if the scope of the arbitration provision covered Plaintiff's claims, which it does not).

**D. As Wayfair Inc. is not a signatory to or third-party beneficiary of the purported arbitration provision it cannot compel arbitration of Plaintiff's claims against it.**

It has long been the rule in Illinois that only signatories to an arbitration agreement can file a motion to compel arbitration. *Vukusich v. Comprehensive Accounting Corp.*, 150 Ill. App. 3d 634, 640 (Ill. App. Ct. 2d Dist. 1986). A nonparty to an arbitration agreement can neither compel arbitration nor be compelled to arbitrate. *See Board of Educ. v. Meridian Educ. Assoc.*, 112 Ill. App. 3d 558, 562 (Ill. App. Ct. 5th Dist. 1983). Here, both Wayfair Inc. and Plaintiff did not sign the arbitration agreement.[5]

Furthermore, under Illinois law, there are two kinds of third-party beneficiaries, intended

---

[5] As to plaintiff, Wayfair states only: "If we request, you agree to sign a non-electronic version of these Terms of Use." *See* Ex. A.

14

778782.1

and incidental. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 758-59 (7th Cir. 2008). "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." *Id*. (citations omitted). "[T]here is a strong presumption against creating rights in a third-party beneficiary. To overcome this presumption the intent to benefit a third party must affirmatively appear from the language of the contract and the circumstances surrounding the parties at the time of execution." *Wallace v. Chi. Housing Auth*., 298 F. Supp. 2d 710, 724 (N.D. Ill. 2003). Of course, "[e]xpress language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party . . . ." *Id*. (quoting *Quinn v. McGraw-Hill Cos*., 168 F.3d 331, 334 (7th Cir.1999)). Here, there is no express language suggesting that Wayfair Inc. was intended to be a third-party beneficiary of the purported arbitration provision.

Likewise, there is no evidence of an agency relationship. An agency relationship has two components: (1) the principal has the right to control the manner and method in which the agent performs work for her, and (2) the agent has the power to subject the principal to personal liability. *Knapp v. Hill*, 276 Ill.App.3d 376, 380, 212 Ill.Dec. 723, 726, 657 N.E.2d 1068, 1071 (Ill. 1995); *see also Peterson v. H & R Block Tax Services, Inc*., 971 F. Supp. 1204 (N.D. Ill. 1997).

Wayfair has not presented any facts establishing that Wayfair LLC was an agent of Wayfair Inc. – indeed, the Terms of Use plainly state: "No agency, partnership, joint venture, employee-employer or franchiser-franchisee relationship is intended or created by these Terms of Use." Ex. A. Wayfair, Inc. simply has no standing to challenge Plaintiff's chosen venue.

778782.1

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Wayfair's Motion in its entirety.

| | |
|---|---|
| Dated: April 5, 2019 | By: *Katrina Carroll*<br>**LITE DEPALMA GREENBERG, LLC**<br>Katrina Carroll<br>Kyle A. Shamberg<br>Nicholas R. Lange<br>111 W. Washington Street, Suite 1240<br>Chicago, Illinois 60602<br>Telephone: (312) 750-1265<br>Email: kcarroll@litedepalma.com<br>kshamberg@litedepalma.com<br>nlange@litedepalma.com<br><br>**CONSUMER PROTECTION LEGAL, LLC**<br>Tiffany M. Yiatras (#6286795)<br>308 Hutchinson Road<br>Ellisville, Missouri 63011-2029<br>Telephone: 314-541-0317<br>Email:<br>tiffany@consumerprotectionlegal.com<br><br>***Attorneys for Plaintiff and the Proposed Classes*** |

778782.1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5, 2019 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: April 5, 2019  By: *Katrina Carroll*

778782.1